# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

10th Circuit - Family Division - Brentwood
PO Box 1208
Kingston NH 03848-1208

Telephone: (603) 642-6314
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

**LAWRENCE SCOTT FORSLEY, ESQ**
**FORSLEY & EGGLESTON PA**
**86 HIGH STREET**
**HAMPTON NH 03842-2215**

Case Name:     **In the Matter of Larissa Kiers and George Campbell, III**
Case Number:   **618-2012-DM-00470**

Enclosed please find a copy of the Court's Order dated October 23, 2012 relative to:

> **Decree of Divorce**
> **Final Decree on Petition for Divorce**
> **Parenting Plan**
> **Uniform Support Order**

Any party obligated to pay child support is advised that it is his/her responsibility to keep the Court (and the Division of Human Services if appropriate) advised of his/her current mailing address in writing, until such time as support payments are terminated.

It will cost $25.00 for a certified copy of your decree.

October 26, 2012

Cheryll-Ann Andrews
Clerk of Court

(586)
C:  George T Campbell, III

NHJB-2207-DF (07/01/2011)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

Court Name: 10th Circuit-Family Division-Brentwood

Case Name: In The Matter of Larissa Kiers and George Campbell, III

Case Number: 618-2012-DM-470

## DECREE OF DIVORCE

Divorce DECREED.

Cause: Irreconcilable differences which have caused the irremediable breakdown of the marriage.

The following documents are approved and incorporated as part of this decree:

☒ Agreed Upon Final Decree on Divorce filed by the parties

☐ Proposed Final Decree on Divorce ☐ filed by petitioner ☐ filed by respondent

☒ Parenting Plan

☒ Uniform Support Order

☐ Other: _____

N/A _____ may resume use of her/his former name: N/A _____

**Recommended:**

_____
Date

_____
Signature of Marital Master

_____
Printed Name of Marital Master

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

10/23/12
Date

_____
Signature of Judge

JULIE A. INTROCASO
Printed Name of Judge

# STATE OF NEW HAMPSHIRE
# JUDICIAL BRANCH

## 10ᵀᴴ CIRCUIT COURT – FAMILY DIVISION – BRENTWOOD

**In the Matter of George T. Campbell, III and Larissa Kiers**
**Docket No: 2012-DM-**

### FINAL DECREE ON PETITION FOR DIVORCE

The foregoing Final Decree is proposed by agreement.

1. **DIVORCE**:  The parties are granted a divorce on the ground that irreconcilable differences have arisen, which have caused the irremediable breakdown of the marriage.

2. **PARENTING PLAN AND UNIFORM SUPPORT ORDER:**  The final Parenting Plan and Uniform Support Order are attached hereto and incorporated herewith.

    In consideration of the downward deviation in the amount of child support paid by George, both parties agree that they shall be equally responsible for the payment of "extracurricular" and other expenses incurred on behalf of the minor children, including, but not limited to, those for summer camps; sports camp(s); lessons; and uninsured medical expenses.

3. **TAX EXEMPTION FOR CHILDREN**:  So long as he is current in his child support obligation for the applicable tax year, George may claim Luke and Larissa may claim Ella as dependents in every tax year.  When Luke is no longer eligible, the parties shall alternate claiming Ella, commencing with George. The parties shall complete any IRS forms necessary to effectuate this agreement.

4. **GAL FEES/COURT FUND REIMBURSEMENT**: Not applicable.

5. **ALIMONY**: Neither party shall pay alimony to the other.

7

6. **HEALTH INSURANCE FOR SPOUSE**: Larissa is currently enrolled in a group health insurance policy which is provided as a benefit of her employment through The New Hampshire Public Defender.  This group health insurance plan may be subject to New Hampshire laws (RSA 415:18, VII b) and/or federal laws (if the employer participates in a self-insured plan) regarding the continuation of medical coverage for an ex-spouse.  Subject to New Hampshire laws and federal laws relating to the continuation of medical coverage for an ex-spouse, Larissa shall maintain her current medical insurance policy for George, her ex-spouse, for the maximum period of time permitted by his group health insurer and/or as permitted under the laws of the State of New Hampshire or applicable federal laws, whichever period is longer.  Additionally, in the event of Larissa's re-marriage, George shall have the right to continue to be eligible for medical coverage by means of a rider to Larissa's family plan or the issuance of an individual plan to the full extent allowed under applicable law.

Larissa shall notify her employer within thirty (30) days of the effective date of the parties' divorce of the change in coverage and George shall be solely responsible to pay any increases in premiums due to the continuation of his medical coverage.  Each party is solely responsible to pay their own uninsured health, dental and optical expenses, including all applicable deductibles and co-pays.

7. **LIFE INSURANCE**:

A. George shall maintain term life insurance in the amount of $500,000, naming Larissa as trust beneficiary for the children until the youngest child graduates from high school.

B.  At such time as Larissa may have term life insurance as a benefit of her employment, she shall maintain life insurance in the full amount of coverage

available, naming George as trustee beneficiary for the children until the youngest child graduates from high school.

C. The parties shall exchange annual proof of coverage. Neither party shall encumber the policy or change beneficiaries until the specified conditions are met.

8. **MOTOR VEHICLES**:

A. George is awarded the 2006 Mazda 6 station wagon and the 1995 Mazda Miata, free and clear of all right, title, claim or interest of Larissa, and he shall be solely responsible for the associated costs, including insurance, registration, maintenance and use. There are no liens.

B. Larissa is awarded the 2005 Ford Escape automobile, free and clear of all right, title, claim or interest of George, and she shall be solely responsible for the associated costs, including insurance, registration, maintenance and use. There is no lien.

C. The parties shall indemnify and hold one another harmless consistent herewith.

9. **FURNITURE AND OTHER PERSONAL PROPERTY**:  The parties have equitably divided their furniture, furnishings and personal property and each is awarded the personal property in his or her respective possession, free and clear of all right, title, claim, interest or obligation of the other.

10. **PENSIONS & OTHER TAX-DEFERRED ASSETS**:  Each party is awarded the retirement assets, including any 401K or pension, in his or her individual name, free and clear of all right, title, claim or interest of the other.

A. **Larissa's 401K**: Larissa has a 401K plan managed by Vanguard through her employment at the New Hampshire Public Defender.  The value of that plan as of August 1, 2012 was approximately $93,714.00  In consideration of the other provisions of this Decree, this account shall be awarded to Larissa free and clear of any interest of George.

3

B. **George's 401K**: George has an interest in two 401K plans managed by American Funds and Fidelity. The combined values of those plans are approximately $90,886.00. In consideration of the other provisions of this Decree, these accounts shall be awarded to George free and clear of any interest of Larissa.

C. **George's MacLane Law Firm Pension**: George has an interest in a pension plan though his former employment at MacLane, Graf, Raulerson & Middleton. Larissa's interest in this plan shall be divided in accordance with the <u>Hodgins</u> line of cases. For purposes of this calculation, the parties agree that Larissa's marital share of George's interest in this pension shall be fifty (50%) percent.

The payment of these benefits shall be effectuated by a Qualified Domestic Relations Order that complies with Section 414(p) of the Internal Revenue Code and section 206(d)(3) of the Employee Retirement Income Security Act. This Order shall be prepared by George.

11. <u>**OTHER INTANGIBLE PERSONAL PROPERTY**</u>:

A. <u>**Bank Accounts**</u>: The parties shall close the joint Citizens Bank savings account and equally divide the remaining proceeds. Each party is awarded any bank accounts in his or her individual name, or for which he or she is a signatory, free and clear of any and all right, title, claim or interest of the other.

B. <u>**Stocks, Bonds, Mutual Funds or Other**</u>: Not applicable.

12. <u>**BUSINESS INTEREST OF THE PARTIES**</u>: Not applicable.

13. <u>**ALLOCATION OF DEBT**</u>: There is no joint credit card debt. Each party shall be solely responsible for any debt in his or her individual name, incurred during the marriage or after their separation, free and clear of any obligation of the other. Specifically, George shall be solely responsible for the following debt: the American Educational Services student loan in his individual name; the Chase VISA credit card ending in account #5046; and the Capitol One VISA credit card ending in account # 2248. Larissa shall be solely responsible

4

for the following debt: the American Educational Services student loan in her individual name; and the Citizens' credit card ending in account #_____.   The parties shall indemnify and hold one another harmless consistent herewith.

14. **MARITAL HOMESTEAD**:  Larissa is awarded the marital home located at 15 Highland Street in Exeter, New Hampshire, free and clear of any and all right, title, claim, interest or obligation of George.  Within thirty (30) days of the Final Decree of Divorce, Larissa shall take and document substantial and reasonable efforts to refinance the mortgage to remove George's name and to pay him his equitable interest in the real property, which the parties agree is $25,000.00.  Although this amount is somewhat less than one-third (1/3) of the current equity in the home, the parties agree this is a reasonable division considering the slightly downward deviation in child support.  George shall execute a quitclaim deed for the closing on the refinance.

15. **OTHER REAL PROPERTY**: Not applicable.

16. **CHARGE AGAINST THE ESTATE**: Any unsatisfied obligations under the terms of the Final Decree of Divorce shall be a charge against the estate of the responsible party.

17. **EXECUTION OF DOCUMENTS**:  Unless otherwise specified herein, the parties shall execute any documents necessary to effectuate the foregoing agreement within thirty (30) days of the Final Decree of Divorce.

18. **RESTRAINTS AGAINST THE PERSON**:  Not applicable.

19. **NAME CHANGE**:  Not applicable.

20. **OTHER REQUESTS**:

A. **Waiver of Hearing:**  The foregoing Final Decree and the incorporated Final Parenting Plan and Uniform Support Order constitute the final agreement of the parties on all

5

issues. The parties waive their right to an uncontested hearing, and request that the Final Decree of Divorce be approved on the final documents filed herewith.

B. **Disclosure of Assets:** The parties warrant that they have fully disclosed all assets within their knowledge on their respective Financial Affidavits, specifically including any pension, profit sharing or retirement account, along with reasonable estimated values of each asset. The financial information contained on each party's Financial Affidavit has been relied upon by the other party.

C. **Mutual Releases:** Other than as set forth in this decree or other order of this court, the parties shall and do hereby remise, release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law or in equity, which either of them every had, now has or may hereinafter have against the other upon reason of any manner, cause or thing up to the date of the execution of this Final Decree. Each party releases and agrees to defend, indemnify and hold the other harmless from any and all claims of any nature whatsoever arising out of the marriage.

D. **Obligations:** Unless specifically mentioned in this decree, each party shall be solely responsible for any bills, obligations or other indebtedness that he or she has charged or incurred before or during the marriage.

E. **Change of Address or Employment:** Each party shall promptly notify the other of any change in his/her address or telephone number, and of any material change in employment as long as there are any continuing obligations under this decree.

F. **Independent Legal Advice:** This Final Decree is the result of settlement. Each of the parties agree that he or she has had the opportunity to seek independent legal advice by counsel of his or her own selection and that the choice of either of them to obtain or decline representation has been of his or her own choosing. The parties further acknowledge that each of

them has read the Final Decree, understands it, and believes it to be fair and reasonable; and that each signs the Final Decree freely and voluntarily, without duress or undue influence, having weighed all of the facts, conditions and circumstances likely to influence his/her judgment. Each party acknowledges that the mediator did not act as a representative or an advocate for either party in the mediation and did not offer legal advice to either party.

G. **Modification or Waiver:** A modification or waiver of any of the provisions of this Final Decree shall be effective only if made in writing and executed with the same formality as this Final Decree. The failure of any party to insist upon strict performance of any of the provisions of this Final Decree shall not be construed as a waiver of any subsequent default of the same or similar in nature.

H. **Binding Effect of Final Decree:** Pending entry of a Final Decree of Divorce, the parties agree that the terms of the within Final Decree shall be binding and the parties shall undertake to effect and commence the transfers and/or obligations contained therein.

I. **Non-Recognition Property Transfers:** The parties have divided their various marital property incident to this divorce, such that all transfers outlined herein shall be accorded non-recognition treatment pursuant to Internal Revenue Code 1041, as amended, either as transfers between spouses prior to the termination of the marriage, or as transfers related to the termination of the marriage pursuant to this divorce stipulation.

J. **Compliance with Rule 1.25-A:** The parties have agreed to limit their document exchange under Rule 1.25-A.

SO AGREED.

_____    _____
George T. Campbell, III          Larissa Kiers
Petitioner                       Respondent

Date:    8 / 29 / 12          Date:    8·27·12

STATE OF NEW HAMPSHIRE
COUNTY OF *Merrimack*

Before me, appeared George T. Campbell, III, known to me or upon proper identification, took oath that he has had the opportunity to seek independent legal advice by counsel of his own selection and that the choice of to obtain or decline representation has been of his own choosing. George T. Campbell, III further acknowledges that he has read the Final Decree, understands it, and believes it to be fair and reasonable; and that he signs the Final Decree freely and voluntarily, without duress or undue influence, having weighed all of the facts, conditions and circumstances likely to influence his judgment.

Date:    8/29/12

_____
Notary Public/ ~~Justice of the Peace~~
My commission expires:    10/8/13

STATE OF NEW HAMPSHIRE
COUNTY OF ROCKINGHAM

Before me, appeared Larissa Kiers, known to me or upon proper identification, took oath that she has had the opportunity to seek independent legal advice by counsel of her own selection and that the choice of to obtain or decline representation has been of her own choosing. Larissa Kiers further acknowledges that she has read the Final Decree, understands it, and believes it to be fair and reasonable; and that she signs the Final Decree freely and voluntarily, without duress or undue influence, having weighed all of the facts, conditions and circumstances likely to influence her judgment.

Date:    August 27, 2012

_____
Notary Public/ ~~Justice of the Peace~~
My commission expires:

8

SO RECOMMENDED.

Date: _____          _____
                                        Marital Master

SO APPROVED.

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

Date: __10/23/12__                      _____
                                        Presiding Justice
                                              JULIE A. INTROCASO

# THE STATE OF NEW HAMPSHIRE
# JUDICIAL BRANCH
## 10th CIRCUIT – FAMILY DIVISION - BRENTWOOD

**IN THE MATTER OF: GEORGE T. CAMPBELL, III and LARISSA KIERS**
**Docket No. 2012-DM-**

## PARENTING PLAN

**This parenting plan is agreed upon by George T. Campbell, III and Larissa Kiers.**

**This parenting plan is Final. All completed paragraphs shall be incorporated in the Court's final orders.**

The parental rights and responsibilities statute, RSA 461-A, requires any party in a divorce, legal separation, or parenting (formerly known as "custody") case to file a parenting plan, whether s/he is seeking an order establishing parental rights and responsibilities or an order modifying such rights and responsibilities. As you complete the Parenting Plan, please bear in mind this state's policy (below) as set forth in RSA 461-A:2. This policy will guide the court in making decisions affecting your parental rights and responsibilities.

Because minor children do best when both parents have a stable and meaningful involvement in their lives, it is the policy of this state, unless it is clearly shown that in a particular case it is detrimental to a child, to:

(a) Support frequent and continuing contact between each child and both parents.

(b) Encourage parents to share in the rights and responsibilities of raising their minor child after the parents have separated or divorced.

(c) Encourage parents to develop their own parenting plan with the assistance of legal and mediation professionals, unless there is evidence of domestic violence, or child abuse/neglect.

(d) Grant parents and courts the widest discretion in developing a parenting plan.

(e) Consider both the best interests of the child in light of the factors listed in RSA 461-A:6 and the safety of the parties in developing a parenting plan.

This parenting plan is for the following children:

| | Full Name | Date of Birth |
|---|---|---|
| 1. | **Luke Thomas Campbell** |  |
| 2. | **Ella Pauline Campbell** | |

1

**A. Decision-Making Responsibility:**

1. <u>Major Decisions</u>: Both parents shall have joint decision making responsibility which means that they shall share in the responsibility for making major decisions concerning the minor children. These include, but are not limited to, decisions about their education, non-emergency health and dental care, and religious training.

(a) Legal Residence of ███████████████████████████████████

(b) Legal Residence of ███████████████████████████████████

2. <u>Day-To-Day Decisions</u>: Each parent shall make day-to-day decisions for the minor children during the time he/she is caring for them. This includes any emergency decisions affecting their health or safety. A parent who makes an emergency decision shall share the decision with the other parent as soon as reasonably possible.

**B. Residential Responsibility & Parenting Schedule:**

1. <u>Routine Schedule</u>: The children shall reside primarily with Larissa and George shall have parenting time in accordance with the schedule set forth below:

(a) George shall have parenting time with the children on alternating weekends beginning on Friday after school or pick up from day care and continuing until Sunday afternoon at 5:00 p.m.

(b) George shall also have parenting time the children on one day during each week (Tuesdays or another day agreed upon by both parties) beginning at 5:00 p.m. and continuing until 7:00 p.m.

(c) George will also have parenting time with the children on those Thursdays preceding Larissa's weekend parenting time. In the event the children's school or extra-curricular activity schedules or either parent's work schedules make parenting time during the week impractical, George's parenting time shall be rescheduled by mutual agreement of the parties for another day (or days) as soon as possible.

(d) In the event George moves to the Exeter Region Cooperative School District (Brentwood, Exeter, East Kingston, Kensington, Newfields and Stratham), his regular parenting time with the children on alternating weekends shall be extended to include overnights on Sundays so that the children shall be with him from Friday after school or pick up from day care and continuing until Monday morning at the beginning of the school day or, on those days when there is no school, until 9:00 a.m. unless the parties agree otherwise.

(e) The parties further agree that, in the event George relocates to Exeter, they will consider and discuss adding one additional overnight with him during each two week period. In the event the parties do not agree as to this additional overnight, they agree to submit the issue, jointly, to a mutually acceptable third party. In the first instance, this third party shall be Katherine Forbes Fisher. In the event Katherine Forbes Fisher is not available, the parties will agree on a substitute. If, after submitting the issue to such third party, the parties do not agree on the additional overnight, the issue may, on the motion of either

party, be submitted to a court of competent jurisdiction for determination. The parties agree that this issue of an additional overnight shall not be considered a modification to the parenting plan under New Hampshire RSA 461-A:11.

(f) Nothing in this parenting plan shall prevent the parties from mutually agreeing to additional parenting time for either party as such circumstances may arise.

2. Holiday and Birthday Planning:  The holidays and birthdays listed below should be shared as described.  Parenting time on holidays and birthdays which are not subject to the schedule set forth below shall be according to the routine schedule set forth above.

(a) **Mother's Day:** The children shall spend Mother's Day with Larissa each year beginning at 10:00 a.m. and continuing until 5:00 p.m. each year unless Mother's Day falls on Larissa's regularly scheduled weekend in which case the regular parenting schedule shall take precedence.

(b) **Father's Day:** The children shall spend Father's Day with George beginning at 10:00 a.m. and continuing until 5:00 p.m. each year unless Father's Day falls on George's regularly scheduled weekend in which case the regular parenting schedule shall take precedence.

(c) **Thanksgiving** – The parties shall alternate having parenting time with the children on the Thanksgiving Day holiday as follows. George shall have parenting time with the children on all odd numbered years beginning on the Wednesday evening preceding Thanksgiving at 4:00 p.m. and continuing until Friday afternoon at 5:00 p.m. or until the end of his regular parenting time, whichever is later. Larissa shall have parenting time with the children for Thanksgiving on all even numbered years beginning on the Wednesday evening preceding Thanksgiving at 4:00 p.m. and continuing until Friday afternoon at 5:00 p.m. or until the end of her regular parenting time, whichever is later.

(d) **Christmas Eve/Christmas Day**: Beginning with Christmas 2012 and continuing on all even numbered years, Larissa shall have parenting time with the children beginning on December 24th at 12:00 noon and continuing until Christmas Day at 3:00 p.m. and George shall have parenting time with the children beginning on Christmas Day at 3:00 p.m. and continuing until December 26th at 5:00 p.m.

During all odd numbered years, George shall have parenting time with the children beginning on December 24th at 12:00 noon and continuing until Christmas Day at 3:00 p.m. and Larissa shall have parenting time with the children beginning on Christmas Day from 3:00 p.m. until December 26th at 5:00 p.m.

(e) **Children's Birthdays:** In those years when either child's birthday falls on a weekend, the regular weekend schedule shall be adjusted such that both parents have parenting time with the children on the weekend of their birthday and on a schedule to be agreed upon by both parents.

(f) **Other religious, civil and family celebrated special occasions:** The children shall spend equal time with both parents on other important religious and family occasions.

3. Three-day weekends: The parent exercising parenting time on the weekend before the following Monday holidays shall have parenting time on that Monday holiday until 5:00 p.m.  Parenting time on

three-day weekends, which are not set forth below, shall be according to the routine schedule set forth above.

      (a) M. L. King Jr. Civil Rights Day
      (b) Presidents' Day
      (c) Memorial Day
      (d) Labor Day
      (e) Columbus Day

4. <u>Vacation Schedule</u>:

(a) **December Vacation**: No December vacation schedule shall apply. The routine schedule set forth above shall apply. However, both parents shall have the opportunity to spend equal time with the children during their December school vacation should their work schedules allow them to do so. In the event a parent wishes to have additional parenting time during the children's December school vacation, he/she shall provide the other parent with notice of their plans by November 1st. In the event of a conflict concerning parenting time during the children's December school vacation, Larissa shall have priority in all even numbered years and George shall have priority in all odd numbered years.

(b) **February and April Vacations**: Larissa shall have the children during their February school vacation on all even years and George shall have the children during their February school vacation on all odd years. Larissa shall have the children during their April school vacation on all odd years and George shall have the children during their April school vacation on all even years. For purposes of this vacation period, school vacations shall run from Friday to the following Friday or from Sunday to the following Sunday as necessary to preserve the alternating weekend regular parenting schedule.

If either parent is traveling with the children during any vacation period, he or she shall provide an itinerary and contact information in advance of the trip. The non-traveling parent shall provide written authorization for the travel in advance of the trip, if necessary for travel arrangements.

(c) **Summer Vacations**: Each parent shall have up to one week (*i.e.*, 7 consecutive days) of uninterrupted vacation time with the children during the summer. Once Ella begins the second grade, however, each parent's vacation time during the summer shall include two (2) weeks of uninterrupted vacation time with the children. For purposes of this vacation period, school vacations shall run from Friday to the following Friday or from Sunday to the following Sunday as necessary to preserve the alternating weekend regular parenting schedule.

Each parent shall provide written notice to the other parent by April 1st of his/her requested vacation time. In the event of a conflict regarding each parent's request for summer vacation time with the children, Larissa shall have first choice in all even years and George shall have first choice in all odd years.

If either parent is traveling with the children during any vacation period, he or she shall provide an itinerary and contact information in advance of the trip. The non-traveling parent shall provide written authorization for the travel in advance of the trip, if necessary for travel arrangements.

5. <u>Supervised Parenting Time</u>: Not applicable.

6. <u>Other Parental Responsibilities</u>: Each parent shall promote a healthy, beneficial relationship between the children and the other parent and shall not demean or speak out negatively in any manner that would damage the relationship between either parent and the children.  Neither parent shall permit the children to be subjected to persons abusing alcohol or using illegal drugs. This includes the abuse of alcohol or the use of illegal drugs by the parent.

The parties agree to, or the court establishes, the following additional expectations:

(a) A parent requesting a temporary change to the parenting schedule shall act in good faith and ask the other parent about such change as soon as possible. The parents are expected to fairly adjust parenting schedules when family situations, illnesses, or other commitments make modification reasonable.

(b) If a parent requires childcare during his/her parenting time for a period reasonably expected to last longer than four (4) hours, then the other parent shall be offered the opportunity to parent the children. This section does not apply to regularly scheduled day care.

(c) Each parent shall be responsible for ensuring that each child attends regularly scheduled activities, including but not limited to sports and extra-curricular activities, while he/she is with that parent.

(d) As the children get older, their individual interests may impact the parenting schedule set forth in this parenting plan. Each parent shall be flexible in making reasonable adjustments to the parenting schedule as the needs and interests of their maturing children require.

**C. Legal Residence of a Child for School Attendance:** The children shall attend school in the school district where the parent with sole or primary residential responsibility resides.  Under this plan, that parent is Larissa.

**D. Transportation and Exchange of the Children**: George shall be responsible for transporting the children at the beginning and end of his parenting time during the week.  George shall be responsible for picking up the children on Friday afternoons in Exeter and Larissa shall be responsible for picking up the children on Sunday afternoons in Concord.

**E. Information Sharing and Access, Including Telephone and Electronic Access:**  Both parents have equal rights to inspect and receive the children's school records, and both parents are encouraged to consult with school staff concerning each child's welfare and education. Both parents are encouraged to participate in and attend the children's school events.

Both parents have equal rights to inspect and receive governmental agency and law enforcement records concerning the children.

Both parents have equal rights to consult with any person who may provide care or treatment for the children and to inspect and receive their medical, dental or psychological records, subject to other statutory restrictions.

Each parent has a continuing responsibility to provide a residential, mailing, or contact address and contact telephone number to the other parent.

Each parent has a continuing responsibility to notify the other parent of any emergency circumstances or substantial changes or decisions affecting either child, including their medical needs, as close in time to the emergency circumstance as possible.

1. Parent-Child Telephone Contact: The children shall be given privacy during their conversations with either parent and both parents shall be permitted to speak by telephone with them at all reasonable times.

2. Parent-Child Written Communication: Both parents and the children shall have the right to communicate in writing, including e-mail and text messaging, during reasonable hours without interference or monitoring by the other parent.

**F. Relocation of a Residence of a Child:** The relocation of a child's residence in which she lives at least 150 days per year is governed by RSA 461-A:12. In general, either parent may move the child's residence if it results in the parents living closer and it if will not affect the child's school enrollment. Prior to relocating the child's residence farther from the other parent or in such a way that school enrollment will be impacted, the parent shall provide reasonable notice to the other parent. For purposes of this section, 60 days notice shall be presumed to be reasonable unless other factors are found to be present. At the request of either parent, the court shall hold a hearing on the relocation issue.

**G. Procedure for Review and Adjustment of Parenting Plan:** The parents shall meet as often as necessary to review this parenting plan and the well-being of the children. Any agreed-on changes shall be written down, signed by both and filed with the court. (Each should keep a copy)

**H. Method(s) for Resolving Disputes:** In the future, if the parents have a disagreement about parenting issues, the parents shall try to work it out in the best interest of the children. If the parents are unable to work out the disagreement, they shall seek the help of a neutral third party to assist them. Only if the parents are unable to work out the disagreement after seeking third party assistance will they ask the court to decide the issue.

**I. Other parenting agreements important to the parents (or the children) are listed below or are set forth in the two attached pages.**

We request that the Court approve this Parenting Plan.

6

Respectfully Submitted.

_____        _____        3·29-12
Larissa Kiers, Petitioner        Witness/Attorney        Date

_____        Sammie Marston        _____
George T. Campbell, III        Witness/Attorney        Date


**********************************************************


**Recommended by:**

_____        _____        _____
Signature of Marital Master        Date        Name of Marital Master


**So Ordered:**

   I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

_10/23/12_____        _____
Date        Signature of Judge

        JULIE A. INTROCASO

        _____
        Printed Name of Judge

7

# THE STATE OF NEW HAMPSHIRE

## JUDICIAL BRANCH

### http://www.courts.state.nh.us

Court Name:      10th Circuit - Family Division - Brentwood

Case Name:      In the Matter of George Campbell, III and Larissa Kiers

Case Number:   2012-DM-
(if known)

# UNIFORM SUPPORT ORDER

| Name, Residence and Mailing Address of Person Ordered to Pay Support (Obligor) | Name, Residence and Mailing Address of Person Receiving Support (Obligee) |
|---|---|
| George Campbell, III | Larissa Kiers |

Employer  Stein Law Firm, PLLC

Employer Address   One Barberry Lane

Concord, NH 03301

Employer  New Hampshire Public Defender

Employer Address   142 Portsmouth Avenue

Stratham, NH 03885

Child(ren) to whom this order applies :

| Full Name | Date of Birth | Full Name | Date of Birth |
|---|---|---|---|
| Ella Pauline Campbell | | Luke Thomas Campbell | |

The following parties appeared:   ☒ Obligor   ☒ Obligee   ☐ Division of Child Support Services

☐ Other _____

NOTE: SECTIONS PRECEDED BY ☐ ARE ONLY PART OF THIS ORDER IF MARKED.

1. This order is entered:

   ☐ after hearing

   ☒ upon approval of agreement

   ☐ upon default

2. This order is a:

   ☐ temporary order

   ☒ final order

☐ 3. This order modifies a final support obligation in accordance with :

   ☐ a three year review (RSA 458-C:7)   OR   ☐ substantial change in circumstances, as follows :

_____

Case Name:    In the Matter of George Campbell, III and Larissa Kiers
Case Number:  2012-DM-

## UNIFORM SUPPORT ORDER

4. Obligor is ORDERED to PAY THE FOLLOWING AMOUNTS (See Standing Orders 4A-4G.) :

   4.1 ☒ **CHILD SUPPORT:**      $ __2,200.00__   per   __Month__ .

   4.2 ☐ Arrearage of $      0.00      as of _____   payable $   0.00   per _____ .

   4.3 ☐ Medical arrearage of $      0.00   as of _____   payable $   0.00   per _____ .

   4.4 ☐ **SPOUSAL SUPPORT (ALIMONY) :**   $   0.00   per _____ .

   4.5 ☐ Arrearage of $      0.00      as of _____   payable $   0.00   per _____ .

   4.6 ☐ Alimony shall terminate _____

5. Payments on all ordered amounts shall begin on _____

   All ordered amounts shall be payable to   ☒ Obligee   ☐ DCSS   ☐ Other _____

6.   ☐ This order complies with the child support guidelines. RSA 458 - C.

   ☐ This order, entered upon obligor's default, is based on a reasonable estimate of obligor's income. Compliance with the guidelines cannot be determined.

   ☒ The following special circumstances warrant an adjustment from the guidelines :
   See para. 21 herein

7. Support ordered is payable by immediate income assignment.

☐ 8. The Court finds that there is good cause to suspend the immediate income assignment because :

   ☐ Obligor and obligee have agreed in writing.

   ☐ Payments have been timely and it would be in the best interest of the minor child(ren) because:

_____

☐ 9A. Obligor is unemployed and  **MUST REPORT EFFORTS TO SEEK EMPLOYMENT (See Standing Order 9A).**

☐ 9B. Upon employment the Obligor shall bring the matter forward for recalculation of support. Failure to do so may result in a recalculated support order effective the date of employment.

## MEDICAL SUPPORT FINDINGS (Paragraphs 10 through 15)

10. OBLIGOR'S medical support reasonable cost obligation: $      425.00      per month.

   10A. ☐ The medical support reasonable cost obligation is adjusted from the presumptive amount because of the following special circumstances (See Standing Order 6):

_____

11. Private health insurance coverage   ☐ is not available   ☐ is available to the OBLIGOR in an amount equal to or less than the amount of the medical support reasonable cost obligation ordered in paragraph 10.

12. ☐ Private health insurance coverage available to the OBLIGOR is not accessible to the child(ren).

Case Name:    In the Matter of George Campbell, III and Larissa Kiers

Case Number:    2012-DM-

## UNIFORM SUPPORT ORDER

13. OBLIGEE'S medical support reasonable cost obligation: $    260.00    per month.

    13A.  ☐  The medical support reasonable cost obligation is adjusted from the presumptive amount because of the following special circumstances (See Standing Order 6):

    _____

14. Private health insurance coverage    ☐  is not available    ☐  is available to the OBLIGEE in an amount equal to or less than the amount of the medical support reasonable cost obligation ordered in paragraph 13.

15.  ☐  Private health insurance coverage available to the OBLIGEE is not accessible to the child(ren).

## PRIVATE HEALTH INSURANCE COVERAGE (Paragraph 16A and/or 16B must be completed)

16A.  ☐  Obligor  ☒  Obligee is ordered to provide private health insurance coverage for the child(ren) effective    ongoing

16B.  ☐  Obligor  ☐  Obligee is/are not ordered to provide private health insurance coverage at this time but is/are ordered to immediately obtain private health insurance coverage when it becomes accessible and available at an amount equal to or less than the ordered medical support reasonable cost obligation.

## UNINSURED MEDICAL EXPENSES

17. Uninsured medical expenses shall be paid in the following percentage amounts :

    Obligor    50    % Obligee    50    % Other _____

☐ 18. Public assistance (TANF) or medical assistance (Medicaid) is or was provided for the child(ren). Copies of pleadings related to medical coverage and child support were mailed to the Division of Child Support Services, Child Support Legal, 129 Pleasant Street, Concord, NH 03301.

19. ☐ Obligor  ☐ Obligee is adjudicated the father of the minor child(ren) named above. The clerk of the city(ies) of _____ shall enter the name of the father on the birth certificate(s) of the child(ren). The father's date of birth is _____ and his state of birth is _____.

20. The State of _____ has provided $    0.00    in public assistance for the benefit of the minor child(ren) between _____ and _____ for _____ weeks. Obligor is indebted for the assistance in the total amount of $    0.00

21. Variation to standing order (specify paragraph #), additional agreement or order of the Court:

    George will pay child support in the amount of $2,200.00 per month, payable in the amount of $1,100.00 on the 8th and 23rd days of each month, payable directly to Larissa.  The downward deviation fom the Child Support Guidelines is warranted because George has received substantially less than one-half of the equity in the marital home and the parties share the cost of the children's cloting, activities and extracurricular activities

| | | |
|---|---|---|
| _(signature)_ | _(signature)_ | |
| Obligor  George Campbell, III | Obligee  Larissa Kiers | Staff Attorney |
| | | Division of Child Support Services |
| _Paige C. King_ | _Janet M. Letarte_ | |
| Obligor's Attorney/Witness | Obligee's Attorney/Witness | |
| 8-29-12 | August 27, 2012 | |
| Date | Date | Date |

NHJB-2066-FS (01/01/2011)                    Page 3 of 6

Case Name:      In the Matter of Ge  ge Campbell, III and Larissa Kiers
Case Number:    2012-DM-

## UNIFORM SUPPORT ORDER

All paragraphs of this order (except those that have a check box and have not been selected) and all paragraphs of the Standing Order, (except variations in paragraph 21) are part of this order and apply to all parties.

**Recommended:**

_____                    _____
Date                                        Signature of Marital Master/Hearing Officer

                                           _____
                                           Printed Name of Marital Master/Hearing Officer

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

_10/23/12_                                 _____
Date                                        Signature of Judge

                                           JULIE A. INTROCASO
                                           Printed Name of Judge

# THE STATE OF NEW HAMPSHIRE
## UNIFORM SUPPORT ORDER - STANDING ORDER

**NOTICE: This Standing Order (SO) is a part of all Uniform Support Orders (USO) and shall be given full effect as order of the Court. Variations to paragraphs of the SO in a specific case must be entered in paragraph 21 of the USO and approved by the Court.**

(Paragraph numbers in the SO correspond to related paragraph numbers in the USO. Variations entered in paragraph 21 should reference the related paragraph number.)

### SUPPORT PAYMENT TERMS

SO-3A.   All prior orders not inconsistent with this order remain in full force and effect.

SO-3B.   In cases where the order of another jurisdiction is registered for modification, a tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing jurisdiction. (See RSA 546-B:49,III.)

SO-3C.   This order shall be subject to review and Court modification three years from its effective date upon the request of a party. Any party may petition the Court at any time for a modification of this support order if there is a substantial change in circumstances. The effective date of any modification shall be no earlier than the date of notice to the other party. "Notice" means either of the following: 1) service as specified in civil actions or 2) the respondent's acceptance of a copy of the petition, as long as the petition is filed no later than 30 days following the respondent's acceptance. See RSA 458-C:7.

SO-3D.   No modification of a support order shall alter any arrearages due prior to the date of filing the pleading for modification. RSA 461-A:14, VIII.

SO-4A.   The amount of a child support obligation shall remain as stated in the order until the dependent child for whom support is ordered completes his or her high school education or reaches the age of 18 years, whichever is later, or marries, or becomes a member of the armed services, at which time the child support obligation, including all educational support obligations, terminates without further legal action, except where duration of the support obligation has been previously determined by another jurisdiction, or is governed by the law of another jurisdiction, and may not be modified in accordance with statutory language referenced in SO-3B.

SO-4B.   In multiple child orders, the amount of child support may be recalculated according to the guidelines whenever there is a change in the number of children for whom support is ordered, upon petition of any party. In single child orders, the support obligation terminates automatically, without the need for further court action, upon the emancipation of the child. The obligor remains obligated for any and all arrearages of the support obligation that may exist at the time of emancipation

Case Name:    In the Matter of George Campbell, III and Larissa Kiers
Case Number:    2012-DM-

## UNIFORM SUPPORT ORDER

SO-4C.    If the order establishes a support obligation for more than one child, and if the court can determine that within the next 3 years support will terminate for one of the children, the amount of the new child support obligation for the remaining children may be stated in the order and shall take effect on the date or event specified without further legal action.

SO-4D.    In cases payable through the New Hampshire Division of Child Support Services {DCSS}, if there are arrearages when support for a child is terminated, payments on the arrearages shall increase by the amount of any reduction of child support until the arrearages are paid in full.

SO-4E.    Pursuant to RSA 161-C:22, III when an assignment of support rights has terminated and obligor and the recipient of public assistance reunite, obligor may request a suspension of the collection of support arrearage owed to the state under RSA 161-C:4. So long as the family remains reunited and provided that the adjusted gross income of the family as defined by RSA 458-C is equal to or less than 185% of the Federal poverty guidelines as set by the United States Department of Health and Human Services, DCSS shall not take any action to collect the support arrearage owed to the State.

SO-4F.    If the collection of a support arrearage pursuant to RSA 161-C:4 is suspended, the obligor shall provide DCSS with a financial affidavit every six months evidencing the income of the reunited family and shall notify his or her child support worker in writing within ten days of any change in income or if the family is no longer reunited. Failure to report changes in income or in the status of the family as reunited or to provide a financial affidavit shall cause the suspension of collection to terminate.

SO-4G.    Each party shall inform the Court in writing of any change in address, within 15 days of the change, so long as this order is in effect. Service of notice of any proceeding related to this order shall be sufficient if made on a party at the last address on file with the Court. A party who fails to keep the Court informed of such a change in address, and who then fails to attend a hearing because of the lack of notice, may be subject to arrest.

SO-5A.    If no date appears in paragraph 5 of the USO, the first support payment shall be due on the date this order is signed by the Judge.

SO-5B.    If support is payable through DCSS, a DCSS application for child support services must be submitted before DCSS can provide services in accordance with the order.

SO-5C.    If support is payable through DCSS, DCSS is authorized and directed to collect all sums, including any arrearages, from the obligor and forward the sums collected to the obligee or person, department, or agency providing support to the children named in the USO. Any payment shall be applied first as payment towards the current child and medical support obligation due that month and second towards any arrearages

SO-5D.    If support is ordered payable directly to the obligee, it can only be made payable through DCSS at a later time if (1) the children named in the USO receive assistance pursuant to RSA 161 or RSA 167; (2) a party applies for support enforcement services and certifies to DCSS that (a) an arrearage has accumulated to an amount equal to the support obligation for one month, or (b) a court has issued a protective order pursuant to RSA 173-B or RSA 461-A:10 which remains in full force and effect at the time of application; or (3) a court orders payment through DCSS upon motion of any party that it is in the best interest of the child, obligee, or obligor to do so. RSA 161-B:4.

SO-5E.    Collection by DCSS on any arrearage may include intercepting the obligor's federal tax refund, placing liens on the obligor's personal and real property including qualifying financial accounts. Federal tax refund intercept and lien remedies shall be used to collect arrearages even if an obligor is complying with the child support orders. Pursuant to 45 CFR 303.72 (h) any federal tax refund intercept shall be applied first as payment towards the past due support assigned to the State.

SO-5F.    In all cases where child support is payable through DCSS, obligor and obligee shall inform DCSS in writing of any change of address or change of name and address of employer, within 15 days of the change.

SO-5G.    In all cases where child support is payable through DCSS, obligor and obligee shall furnish their social security numbers to the New Hampshire Department of Health and Human Services (Department).

SO-6.    Where the court determines that, in light of the best interests of the child, special circumstances exist that result in adjustments in the application of the guidelines for the child support obligation or the reasonable medical support obligation, the court shall make written findings relative to the applicability of one or more of the special circumstances described in RSA 458-C:5, I.

Case Name:       In the Matter of George Campbell, III and Larissa Kiers
Case Number:     2012-DM-

## UNIFORM SUPPORT ORDER

### INCOME ASSIGNMENT

SO-7A.    Until such time as an income assignment goes into effect, payments shall be made as follows: (1) if the case is not payable through DCSS, directly to obligee, or (2) if support is payable through the DCSS by use of payment coupons available at the local DCSS office. An income assignment will not go into effect for self-employed obligors as long as they do not receive income as defined in RSA 458-B:1, paragraph IX. Future income will be subject to assignment if the case is payable through DCSS..

SO-7B.    If a parent is ordered to provide health coverage for Medicaid-eligible child(ren), he or she must use payments received for health care services to reimburse the appropriate party, otherwise his or her income may be subject to income assignment by DCSS. RSA 161-H:2(V).

SO-7C.    Increased income assignment for the purposes of payment on arrearages shall continue until such time as the arrearages are paid in full.

SO-8.     Whenever an income assignment is suspended, it may be instituted if a Court finds obligor in violation or contempt of this order OR after notice and the opportunity to be heard (RSA 458:B-5 & 7), when the Department begins paying public assistance for the benefit of a child OR when an arrearage amounting to the support due for a one-month period has accrued.

### REPORT CHANGES OF EMPLOYMENT

SO-9A.    If support is payable through DCSS, obligor shall report in writing weekly, or as otherwise ordered by Court, to DCSS, and shall provide details of efforts made to find a job. Efforts to obtain employment shall include registering with New Hampshire Employment Security within two weeks of the date of this order. The obligor shall immediately report employment to DCSS in writing.

SO-9B.    Immediately upon employment the obligor shall report to the obligee, in writing, details of employment, including name and address of employer, the starting date, number of weekly hours and the rate of pay.

### MEDICAL SUPPORT PROVISIONS

SO-10-16B.   (1). In all cases where support is payable through DCSS, or where the Department is providing medical assistance for the child(ren) under RSA 167, the court shall include the medical support obligation in any child support order issued. RSA 461-A:14, IX(d).

SO-10-16B.   (2). The court shall establish and order a reasonable medical support obligation for each parent. The presumptive amount of a reasonable medical support obligation shall be 4 percent of the individual parent's gross income, unless the court establishes and orders a different amount based on a written finding or a specific finding, made by the presiding officer on the record, that the presumptive amount would be unjust or inappropriate, using the criteria set forth in RSA 458-C:5.

SO-10-16B.   (3). The court shall determine whether private health insurance is available to either parent at a cost that is at or below the reasonable medical support obligation amount, as established and ordered pursuant to RSA 458-C:3, V, or is available by combining the reasonable medical support obligations of both parents, and, if so available, the court shall order the parent, or parents, to provide such insurance for the child.

SO-10-16B.   (4). The cost of providing private health insurance is the cost of adding the child to existing coverage, or the difference between individual and family coverage.

SO-12,15.    Accessible health insurance means the primary care services are located within 50 miles or one hour from the child(ren)'s primary residence. RSA 461-A:14, IX(b).

SO-16A-16B   A party providing or ordered to provide health insurance for the child(ren) shall give the other party sufficient information and documentation to make sure insurance coverage is effective. If support is payable through DCSS, or if there has been an assignment of medical support rights to DCSS, the information and documentation shall be provided to DCSS. In addition, obligor shall inform DCSS in writing when health insurance is available, obtained or discontinued.